# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| IN RE HOPE COLLEGE DATA SECURITY BREACH LITIGATION | Case No: 1:22-cv-01224-PLM<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## BRIEF IN SUPPORT OF PLAINTIFFS' RENEWED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## STATEMENT OF ISSUES PRESENTED

1.    Does the proposed Settlement Class meet Rule 23's requirements for class certification for settlement purposes under Fed. R. Civ. P 23(b)(2) and (b)(3)?

**Plaintiffs' Answer: Yes.**

2.    Should Benjamin F. Johns of Shub & Johns LLC be appointed as Settlement Class Counsel?

**Plaintiffs' Answer: Yes.**

3.    Should Plaintiffs be appointed as Class Representatives for the Settlement Class?

**Plaintiffs' Answer: Yes.**

4.    Based on an initial evaluation, is the proposed Settlement fair, adequate, and reasonable, sufficient to warrant the dissemination of notice to the proposed Settlement Class?

**Plaintiffs' Answer: Yes.**

5.    Should Epiq Class Action & Claims Solutions, Inc. ("Epiq") be appointed as Settlement Administrator?

**Plaintiffs' Answer: Yes.**

6.    Does the Notice Plan satisfy the requirements of Rule 23 and Due Process?

**Plaintiffs' Answer: Yes.**

**CONTROLLING AND MOST APPROPRIATE AUTHORITIES**

- Fed. R. Civ. P. 23

- *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)

- *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. V. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

- *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)

- *Beattie v. CenturyTel, Inc*., 511 F.3d 554 (6th Cir. 2007)

- *Breneman v. Keystone Health*, No. 1:22-cv-01643 (Pa. Com. Pl. Apr. 11, 2023)

- *Reynolds v. Marymount Manhattan College*, Case No. 1:22-cv-6846 (S.D.N.Y.)

- *Tucker v. Marietta Area Health Care, Inc.*, No. 2:22-cv-00184 (S.D. Ohio)

- *Kondo v. Creative Services, Inc.*, No. 1:22-cv-10438 (D. Mass.)

- *In re Afni, Inc. Data Breach Litigation*, No. 1:22-cv-01287 (C.D. Ill.)

- *Keefer v. Fulton Bank, N.A.*, No. 1:23-md-03056 (N.D. Ga.)

- *Thomsen v. Morley Companies, Inc.*, 639 F. Supp. 3d 758 (E.D. Mich. 2022)

- *Thomsen v. Morley Companies, Inc.*, No. 1:22-cv-10271, 2023 WL 3437802 (E.D. Mich. May 12, 2023)

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................1

II. STATEMENT OF FACTS.................................................................4

III. PROCEDURAL HISTORY.............................................................5

IV. THE SETTLEMENT TERMS .........................................................7

     A.     Proposed Settlement Class .........................................................7
     B.     The Settlement Fund .................................................................7
          1.     Costs................................................................................10
          2.     CMIS Payments Estimate and Settlement Fund Sequence ......12
          3.     Potential Liability of Settlement Fund......................................14
     C.     Remedial Measures: Security Enhancements and Commitments.......15
     D.     Class Notice and Settlement Administration .......................................17
     E.     Attorneys' Fees and Expenses...........................................................19
     F.     Service Awards to Named Plaintiffs .................................................20
     G.     Release ...............................................................................................21

V. ARGUMENT ....................................................................................21

     A.     The Court Should Certify the Proposed Settlement Class .................22
          1.     Rules 23(a) Requirements Are Met for Settlement Purposes...23
          2.     Rule 23(b) Requirements Are Met for Purposes of Settlement...................................................................................27
               a.     Common Questions of Law and Fact Predominate........28
               b.     A Class Action is the Superior Method of Adjudication ...............................................................29
     B.     The Court Should Appoint Proposed Settlement Counsel Benjamin F. Johns as Class Counsel........................................................................30
     C.     The Proposed Settlement is Fundamentally Fair, Reasonable, and Adequate and thus Warrants Preliminary Approval ...........................31
          1.     The Rule 23(e)(2) Factors Weigh in Favor of Preliminary Approval...................................................................................32

2. The Sixth Circuit's UAW Factors Weigh in Favor of Preliminary Approval..............................................................34

 a. The Settlement Agreement is the Result of Informed Non-Collusive, Arm's Length Negotiations Between the Parties .............................................................................35

 b. The Complexity, Expense and Likely Duration of the Litigation Favors Approval of the Settlement................35

 c. The Parties Engaged in Sufficient Fact Finding............37

 d. The Settlement provides Favorable Relief When Weighed Against the Likelihood of Success on the Merits ...............................................................................38

 e. Proposed Class Counsel and Class Representative Support the Settlement.....................................................40

 f. The Reaction of Absent Class Members is Not Applicable..................................................................40

 g. The Settlement is in the Public's Interest ......................41

D. The Proposed Notice Plan is the Best Practicable .............................42

VI. CONCLUSION.....................................................................................42

## TABLE OF AUTHORITIES

**Cases**

*Afro Am. Patrolmen's League v. Duck*,
  503 F.2d 294 (6th Cir. 1974) ...............................................................22

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)....................................................................... passim

*Amgen Inc. v. Conn. Retirement Plans and Trust Funds*,
  133 S. Ct. 1184 (2013).......................................................................22

*Beattie v. CenturyTel, Inc.*,
  511 F.3d 554 (6th Cir. 2007) ................................................. 24, 25, 27

*Berry v. Sch. Dist. of Benton Harbor*,
  184 F.R.D. 93 (W.D. Mich. 1998).....................................................21

*Bert v. AK Steel Corp.*,
  2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) ...................................35

*Bittinger v. Tecumseh Prods. Co.*,
  123 F.3d 877 (6th Cir. 1997) .............................................................24

*Borcea v. Carnival Corp.*,
  238 F.R.D. 664 (S.D. Fla. 2006).......................................................36

*Breneman v. Keystone Health*,
  No. 1:22-cv-01643 (Pa. Com. Pl. Apr. 11, 2023)............................ 10, 12, 33, 34

*Calloway v. Caraco Pharm. Labs., Ltd.*,
  287 F.R.D. 402 (E.D. Mich. 2012) ...................................................29

*Curry v. SBC Commc'ns, Inc.*,
  250 F.R.D 301 (E.D. Mich. 2008) ....................................................23

*Davidson v. Henkel*,
  302 F.R.D. 427 (E.D. Mich. 2014) ...................................................23

*Fisher Bros. v. Phelps Dodge Indus., Inc.*,
  604 F. Supp. 446 (E.D. Pa. 1985).....................................................41

*Fox v. Iowa Health Sys.*,
  2021 WL 826741 (W.D. Wis. Mar. 4, 2021)......................................37

*Fulton-Green v. Accolade, Inc.*,
  No. CV 18-274, 2019 WL 316722 (E.D. Pa. Jan. 24, 2019)...............30

*Garner Properties & Mgmt., LLC v. City of Inkster*,
  2020 WL 4726938 (E.D. Mich. Aug. 14, 2020)................. 19, 20, 21, 24

*Garner Properties & Mgmt., LLC v. City of Inkster*,
  333 F.R.D. 614 (E.D. Mich. 2020) ...................................................21

*Hammond v. The Bank of N.Y. Mellon Corp.*,
  2010 U.S. Dist. LEXIS 71996 (S.D.N.Y. June 25, 2010) ...................38

*In re Afni, Inc. Data Breach Litigation*,
  No. 1:22-cv-01287 (C.D. Ill.) ...............................................................32
*In re Am. Med. Sys., Inc.*,
  75 F.3d 1069 (6th Cir. 1996) ......................................................... 22, 25
*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) .........................................................41
*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008) .........................................................35
*In re Fed. Skywalk Cases*,
  97 F.R.D. 380 (W.D. Mo. 1983).............................................................41
*In re Hannaford Bros. Co. Cust. Data Sec. Breach Litig.*,
  293 F.R.D. 21 (D. Me. 2013)..................................................................39
*In re Packaged Ice Antitrust Litig.*,
  2010 WL 3070161 (E.D. Mich. Aug. 2, 2010).......................................31
*In re Target Customer Data Sec. Breach Litig.*,
  No. MDL 14-2522, (D. Minn. Mar. 18, 2015) ............................. 12, 40
*In re The Home Depot, Customer Data Sec. Breach Litig.*,
  No. 1:14-MD-2583, ECF No. 181-2 (N.D. Ga. Mar. 7, 2016).............. 12, 33, 40
*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
  266 F. Supp. 3d 1 (D.D.C. 2017).............................................................39
*In re Wawa, Inc. Data Sec. Litig.*, No. CV 19-6019, 2021 WL 3276148 (E.D. Pa.
  July 30, 2021)..........................................................................................37
*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
  722 F.3d 838 (6th Cir. 2013) ......................................................... 22, 28
*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Gen.
Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007) ...................................................... passim
*Kinder v. Nw. Bank*,
  278 F.R.D. 176 (W.D. Mich. 2011)........................................................23
*Kondo v. Creative Services, Inc.*,
  No. 1:22-cv-10438 (D. Mass.)................................................................32
*Kritzer v. Safelite Solutions, LLC*,
  2012 WL 1945144 (S.D. Ohio May 30, 2012)............................. 36, 38
*Machesney v. Lar-Bev of Howell, Inc.*,
  317 F.R.D. 47 (E.D. Mich. 2016) ...........................................................28
*Merenda v. VHS of Michigan, Inc.*,
  296 F.R.D. 528 (E.D. Mich. 2013) .........................................................27
*Meyers v. Onix Grp., LLC*,
  No. CV 23-2288-KSM, 2023 WL 4630674 (E.D. Pa. July 19, 2023) .................26

*Moeller v. The Week Publications, Inc.*,
    649 F. Supp. 3d 530 (E.D. Mich. 2023) ....................................................... 20, 21
*Nelson v. Bansley & Kiener LLP*,
    No. 2021-CH-06274 (Ill. Cir. Ct.) .............................................................. 33
*Powers v. Hamilton Cty. Pub. Def. Comm'n*,
    501 F.3d 592 (6th Cir. 2007) ....................................................................... 28
*Reynolds v. Marymount Manhattan College*,
    Case No. 1:22-cv-6846 (S.D.N.Y.) ............................................................. 24
*Sprague v. General Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998) ....................................................................... 24
*Strano v. Kiplinger Washington Eds., Inc.*,
    649 F. Supp. 3d 546 (E.D. Mich. 2023) ..................................................... 20
*Thacker v. Chesapeake Appalachia, L.L.C.*,
    259 F.R.D. 262 (E.D. Ky. 2009) ........................................................... 31, 34
*Thomsen v. Morley Companies, Inc.*,
    639 F. Supp. 3d 758 (E.D. Mich. 2022) ............................................. 12, 19, 33
*Thomsen v. Morley Companies, Inc.*,
    No. 1:22-cv-10271, 2023 WL 3437802 (E.D. Mich. May 12, 2023)...... 10, 20, 32
*Trombley v. Nat'l City Bank*,
    759 F. Supp. 2d 20 (D.D.C. 2011) ............................................................. 37
*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ........................................................................... 23, 27

**Rules**
Fed. R. Civ. P. 23(a) ................................................................................ passim
Fed. R. Civ. P. 23(a)(1) ............................................................................ 22, 23
Fed. R. Civ. P. 23(a)(2) ................................................................................. 23
Fed. R. Civ. P. 23(a)(3) ................................................................................. 24
Fed. R. Civ. P. 23(a)(4) ................................................................................. 25
Fed. R. Civ. P. 23(b) ................................................................................ passim
Fed. R. Civ. P. 23(b)(2) ................................................................................... 3
Fed. R. Civ. P. 23(b)(3) ............................................................................ passim
Fed. R. Civ. P. 23(c)(2)(B) ........................................................................ 18, 42
Fed. R. Civ. P. 23(e)(2) ............................................................................ 31, 32

**Other Authorities**
Manual for Complex Litigation, § 30.41 (3d ed. 1995) ................................... 31
Manual for Complex Litigation, § 21.632 (4th ed. 2004) ............................... 31
Newberg on Class Actions, § 11.41 (4th ed. 2002) ....................................... 30
Newberg on Class Actions, § 11.53 (4th ed. 2002) ....................................... 42

## I.    INTRODUCTION

As the Court is aware, this case arises from a data breach[1] (the "Data Breach") experienced by Defendant Hope College on or about September 27, 2022 involving the potential unauthorized access of Personally Identifiable Information ("PII") of certain individuals. *See* Declaration of Benjamin F. Johns in support of Plaintiffs' Renewed Unopposed Motion for Preliminary Approval ("Johns Decl."), ¶¶ 3, 9 (attached hereto as **Exhibit A**). Counsel for Plaintiffs in actions related to the Data Breach[2] have worked collaboratively in prosecuting this matter, joining in the action filed under this case number and through the filing of the Consolidated Amended Complaint ("CAC"), filed March 16, 2023. ECF No. 12.

Hope College discovered potential unauthorized access to its network on or about September 27, 2022. CAC, ¶ 5; *see also* Notice of Data Security Event, ECF No. 12-2. An unauthorized user targeted Hope College, which resulted in potential unauthorized access to personal information—described in detail below in § II *infra*—of approximately 156,783 individuals, including, e.g., current or former

---

[1]    Unless otherwise indicated, the defined terms herein shall have the same definition as set forth in the Settlement Agreement and Release dated September 8, 2023.

[2]    *Devries v. Hope College*, Case No. 1:22-cv-01224, filed December 26, 2022; *Garnett v. Hope College*, Case No. 1:22-cv-01225, filed December 27, 2022; *Cyphers v. Hope College*, Case No. 1:23-cv-00013, filed January 5, 2023; *Drost v. Hope College*, filed January 20, 2023; and *Rodgers v. Hope College*, Case No. 1:23-cv-00109 (collectively, the "Related Cases").

students, applicants, employees, contractors, or attendees of events at Hope College. CAC, ¶ 36.

From the initiation of this litigation, the Parties met and conferred and worked towards possible early resolution of this dispute. The Parties participated in a mediation on August 3, 2023 with a Court-approved neutral, Bennett G. Picker, Esq. of the law firm of Stradley Ronon.[3] Johns Decl., ¶¶ 11, 16. The Parties reached a resolution that – if approved by the Court – will resolve the litigation and provide substantive relief to the Settlement Class Members. The Parties have negotiated a Settlement Agreement ("Settlement Agreement" or "S.A."), providing for a $1,500,000 non-revisionary Settlement Fund to be used as the exclusive source of payment to Settlement Class Members, and for Administrative Expenses, including Notice, Costs, and any Fee and Service Awards. Johns Decl., ¶ 18; *see also* S.A. § 3.1.

Settlement Class Members stand to benefit from the Settlement in many ways, as they may qualify for and submit a claim for one of the following: (a) up to $5,000 in Documented Loss Payment upon submission of valid, timely claims, described in § IV *infra* (*see* S.A. § 3.2(a)); (b) Credit Monitoring and Insurance Services ("CMIS") (*see* S.A. § 3.2(b)); or (c) Cash Fund Payment, a pro rata cash payment

---

[3]    The Court approved Mr. Picker as the parties' selected mediator on May 31, 2023. ECF No. 20.

(*see* S.A. § 3.2(c)). Any residual funds—after payment of all class benefits, settlement administration fees, attorneys' fees and costs, and service awards—shall be used for a *pro rata* payment to all Settlement Class Members with an approved claim who elected to receive a Cash Fund Payment. *See* S.A. § 3.9 for full details. Importantly, the Settlement is non-revisionary and no funds will revert back to Hope College.

The results achieved by the Settlement—which compare favorably to settlements that have received final approval by courts in this and other districts[4]— demonstrate the propriety of granting preliminary approval. As such, Plaintiffs respectfully move this Court enter an Order which does the following: (1) grant preliminary approval of the Settlement Agreement; (2) provisionally certify the Settlement Class under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) in connection with the settlement process; (3) provisionally appoint Plaintiffs as representatives of the Settlement Class; (4) provisionally appoint Benjamin F. Johns of Shub & Johns LLC as Settlement Class Counsel; (5) find that the proposed Settlement is sufficiently fair, reasonable, and adequate to allow dissemination of notice of the settlement to the proposed Settlement Class by a settlement

---

[4]     The gross Settlement Fund here produces a gross per class member result of approximately $9.57. After estimated Attorneys' Fees, Costs, Administrative Expenses and proposed Class Representative Service awards, the Net Settlement Fund produces an estimated $5.29 per class member.

administrator; (6) appoint Epiq Class Action & Claims Solutions, Inc. ("Epiq") as Settlement Administrator; (7) approve the Notice Plan for the Settlement described in the Settlement Agreement and its Exhibits, as well as the specific Notice of Class Action and Proposed Settlement (the "Proposed Notice") and direct distribution of the Proposed Notice; (8) establish dates for a hearing on final approval of the proposed Settlement, Plaintiffs' service awards and Plaintiffs' counsel's request for attorneys' fees and expenses; and (9) establish a deadline for the filing of objections by Settlement Class Members and for them to exclude themselves from the proposed Settlement Class with respect to the settlement.

## II.    STATEMENT OF FACTS

Defendant Hope College is a private Christian liberal arts college with its principal place of business in Holland, Michigan. CAC, ¶ 30.

Plaintiffs allege that on September 27, 2022, Hope College first observed that cybercriminals gained unauthorized access to its computer network and the sensitive personal information of Plaintiffs and Class Members. *See, e.g.*, CAC, ¶ 1, 7. This Data Breach involved approximately 156,783 individuals, including current and former employees of Hope College as well as various business clients. CAC, ¶ 1. The information allegedly compromised in the Data Breach included Class Members' sensitive PII including, but not limited to: Social Security numbers ("SSNs"), first and last names, dates of birth, driver's license numbers, and student

ID numbers. CAC, ¶ 3.

Plaintiffs further allege that all of this PII was compromised due to Hope College's negligent and/or careless acts and omissions and its failures to protect the sensitive personal data of its students, applicants, employees, contractors, and/or attendees. CAC, *e.g.*, ¶¶ 5, 10, 11. Hope College denies these allegations.

Plaintiffs allege that they and similarly situated individuals have suffered injury as a result of Hope College's conduct, including: (i) lost or diminished value of their PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; and (iv) the continued risk to their PII, which may remain available on the dark web for individuals to access and abuse. *See, e.g.*, CAC, ¶¶ 1, 14, 123-133, 190.

## III.    PROCEDURAL HISTORY

Plaintiff Jennie Devries initiated this action against Hope College by filing a class action complaint on December 26, 2022. *See* Compl., ECF No. 1. Subsequently, other Related Cases were filed, and, after discussion among counsel for the plaintiffs in the Related Cases, on February 9, 2023, the Plaintiffs jointly filed a motion to consolidate all Related Cases under this case number. *See* Joint Motion to Consolidate, ECF No. 8. On February 14, 2023, the Court granted the relief

requested therein. Order Granting Consolidation, ECF No. 11. On March 16, 2023, Plaintiffs filed the operative, 64 page-long amended complaint. ECF No. 12.

The Parties subsequently agreed to mediation with Mr. Picker. Prior to the mediation, Plaintiffs served Hope College with written questions seeking information relevant to the Data Breach and potential resolution, and Mr. Picker convened telephone calls with both sides. Johns Decl., ¶ 15. On August 3, 2023, the Parties mediated the matter with Mr. Picker. *Id.* ¶ 16. The parties were unable to reach a resolution but, at the conclusion of the mediation, Mr. Picker made a mediator's proposal that was ultimately accepted by both sides. *Id.* ¶ 17. Since then, the Parties have negotiated the details of the Settlement Agreement and its exhibits, and executed the Settlement Agreement on September 8, 2023. *See* Johns Decl., ¶ 2.

On September 8, 2023, Plaintiffs filed their Unopposed Motion for Preliminary Approval and Brief in Support (collectively, the "Motion"). ECF Nos. 25, 26. Following consideration of the aforementioned Motion, on November 13, 2023, this Court issued an Order denying without prejudice Plaintiffs' Motion, holding that "the Court cannot yet preliminarily certify the class[.]" ECF No. 28, PageID.702. In its Order, the Court "identified several ambiguities and outstanding questions that prevent it from preliminarily approving this settlement." *Id.*, PageID.701. The Court first noted that it "requires a more accurate figure and proper estimations of any costs associated with carrying out the proposed settlement." *Id.*

Additionally, relating to the distribution of the settlement payments and potential exhaustion of the Settlement Fund, the Court sought "[a]n estimation of the CMIS cost coupled with an explanation as to why CMIS services would take priority over 'valid claims for Documented Loss Payments[.]'" *Id.*, PageID.702. Finally, the Court sought further explanation of the provision of the settlement agreement related to the treatment of taxes. *Id.*

As such, Plaintiffs' Renewed Motion submitted here seeks to address these three issues raised by the Court to resolve any outstanding ambiguities or questions, addressing estimated costs, CMIS and potential exhaustion of the Net Settlement Fund, and taxes in Sections IV(B.)(1-3) below.

## IV.    THE SETTLEMENT TERMS

### A.    Proposed Settlement Class

The Settlement will provide substantial relief for the following Settlement Class: "all natural persons whose Personal Information was compromised in the Data Breach that was discovered by Hope College on or around September 27, 2022." S.A. § 1.42 (*see* S.A. for exclusions). The Settlement Class contains approximately 156,783 individuals. CAC, ¶ 1.

### B.    The Settlement Fund

Hope College has agreed to create a non-reversionary gross Settlement Fund in the amount of $1,500,000, which will be used to make payments to Settlement

Class Members and to pay the costs of Settlement Administration, any Attorneys'
Fees and Expenses Award, and any Class Representative service awards. S.A. § 3.1.
As noted above, Settlement Class Members may qualify and submit a claim for one
of the following:

### *Documented Loss Payment:*

> Class Members may submit a claim for a Settlement Payment of
> up to $5,000 for reimbursement in the form of a Documented
> Loss Payment. To receive a Documented Loss Payment, a Class
> Member must choose to do so on their Claim Form and submit
> to the Settlement Administrator the following: (i) a valid Claim
> Form electing to receive the Documented Loss Payment benefit;
> (ii) an attestation regarding any actual and unreimbursed
> Documented Loss made under penalty of perjury; and (iii)
> Reasonable Documentation that demonstrates the Documented
> Loss to be reimbursed pursuant to the terms of the Settlement. If
> a Class Member does not submit Reasonable Documentation
> supporting a Documented Loss Payment claim, or if a Class
> Member's claim for a Documented Loss Payment is rejected by
> the Settlement Administrator for any reason, and the Class
> Member fails to cure his or her claim, the claim will be rejected
> and the Class Member's claim will instead be automatically
> placed into the Cash Fund Payment category below.

S.A. § 3.2(a).

### *Credit Monitoring and Insurance Services ("CMIS"):*

> In the alternative to the Documented Loss Payment or the Cash
> Fund Payment, class members may elect to claim 12 months of
> CMIS to be provided by a vendor agreed upon by the parties. The
> CMIS benefit will provide at a minimum three credit bureau
> monitoring services and $1 million in identity theft insurance.
> Said CMIS benefits will be available to class members
> irrespective of whether they took advantage of any previous
> offering of credit monitoring from Hope College. Individuals

who elected to utilize a previous offering of CMIS from Hope College, or who obtained CMIS services from another provider as a result of the Data Breach, will be permitted to postpone activation of their CMIS settlement benefit for up to 12 months.

S.A. § 3.2(b).

***Cash Fund Payment:***

In the alternative to the Documented Loss Payment or the CMIS benefit, Class Members may submit a claim to receive a pro rata Settlement Payment in cash ("Cash Fund Payment"). The amount of the Cash Fund Payment will be calculated in accordance with Section 3.7 below. Class Members who submit a Claim for a Cash Fund Payment will not be entitled to select any of the other Settlement Benefits provided for under Section 3.2(a)-(b).

S.A. § 3.2(c).

As noted in the Court's November 13, 2023 Order, paragraph 3.7 of the Settlement Agreement provides the sequence of the payments from the Settlement Fund.[5] Under the Settlement Agreement, the gross Settlement Fund shall first pay costs. S.A., § 3.7. The remaining amount is the Net Settlement Fund, which will be applied in the following order: first to claimants electing CMIS, second to valid claims for Document Loss Payments, and then the remainder will be paid, pro rata, to those claimants who elected a Cash Fund Payment. S.A., § 3.7.[6] Additional detail

---

[5]    ECF No. 28, PageID.701 (citing Settlement Agreement at § 3.7 ECF No. 26-2, PageID.538).

[6]    Any residual funds that remain—after payment of all above-described class benefits, settlement administration fees, attorneys' fees and expenses of litigation,

regarding the costs and fees associated with the Settlement Fund, the sequence of payment for utilization of the Settlement Fund, and the tax expense is described below.

## 1. Costs

In its November 13, 2023 Order, the Court correctly notes that the gross Settlement per person recovery of roughly $9.57 does not account for fees and costs that will be deducted from the Settlement Fund. ECF No. 28, PageID.701. Here, as detailed below, the Net Settlement Fund is projected to produce a person net recovery of approximately $5.29.

First, similar data breach cases have been approved with a substantially smaller gross per class member value, *see, e.g.*, *Breneman v. Keystone Health*, No. 1:22-cv-01643 (Pa. Com. Pl. Apr. 11, 2023) (order granting preliminary approval where the gross per person award was approximately $3.83). Moreover, other courts have acknowledged the value of the range of benefits available to class members, like the CMIS and Documented Loss Payment available here. *See Thomsen v. Morley Companies, Inc.*, No. 1:22-cv-10271, 2023 WL 3437802, at *2 (E.D. Mich. May 12, 2023) (granting final approval and denying objection where objector argued

---

and any service awards to the Representative Plaintiffs—shall be used to make a subsequent Settlement Payment evenly to all Class Members with approved claims for Cash Fund Payments who cashed or deposited the initial payment they received, provided that the average check amount is equal to or greater than $3.00. S.A. § 3.9.

that the roughly $4 net per person was insufficient in similar data breach class action settlement, with same claims administrator as proposed here, and where the gross per person award was $6.19, since the settlement agreement allowed for selection of, i.e., credit monitoring or actual loss).

Adding further credence to the value provided to Class Members, for this Renewed Motion, Plaintiffs provide the below estimate, elaborating on the costs involved here. As noted, paragraph 3.7 of the Settlement Agreement provides that these payments shall be first made from the gross Settlement Fund: (i) Administrative Expenses, (ii) Fee Award and Costs, (iii) Service Awards, and (iv) taxes. S.A., § 3.7. First, the projected Administrative Expenses for Notice and Claims Administration, by and through the proposed Claims Administrator, Epiq, is estimated at approximately $148,487. *See* November 17, 2023 Supplemental Declaration of Epiq Project Manager Scott DiCarlo ("DiCarlo Decl.), ¶ 7; Supplemental Declaration of Benjamin F. Johns ("Supp. Johns Decl."), ¶ 5. Second, the attorney's fees sought will be 1/3 of the gross Settlement Fund, or $500,000, and the costs incurred by counsel projected to be approximately $11,000 (consisting of appropriate and recognized costs of mediation, filing fees, copy fees, legal research, upcoming travel for any hearings, and service of process). Supp. Johns Decl., ¶ 6. Third, the proposed service awards sought total $10,500 ($1,500 for each of the seven named class representatives). Supp. Johns Decl., ¶ 7. And fourth, as described

in greater detail below, the taxes are projected to be *de minimis*, and any tax amount will be offset by interest earned on the Settlement Fund. DiCarlo Decl., ¶¶ 4, 5; Supp. Johns Decl., ¶ 8. This information is collected in the table below.

| Category | Amount | Comment |
|---|---|---|
| (i) Notice and Claims Admin. | $148,487.00 | (estimated) |
| (ii) Litigation Expenses | $11,013.00 | (estimated) |
| (ii) Attorneys' Fees | $500,000.00 | (subject to Court approval) |
| (iii) Service Awards | $10,500.00 | (subject to Court approval) |
| (iv) Taxes (~$0.00) | | |
| | | |
| Total Estimated Costs and Fees | ~$670,000.00 | |

Thus, the cumulative payments are projected to be approximately $670,000. Johns Decl., ¶ 9. Subtracting this from the $1,500,000 gross Settlement Fund, the Net Settlement Fund is projected to be approximately $830,000. Supp. Johns Decl., ¶ 9. With a class of 156,783, the approximate net person amount from the gross Settlement Fund is $5.29. Supp. Johns Decl., ¶ 9. This net amount exceeds other comparable data breach settlements, i.e., *Morley*, and it even exceeds the gross amounts in *Keystone*, *Target*, and *Home Depot*.

## 2.  CMIS Payments Estimate and Settlement Fund Sequence

As noted, the Court also inquired about the cost of the Credit Monitoring Insurance Services ("CMIS"), and it expressed concern that claims submitted for this category could potentially exhaust the proceeds left over for the others. ECF No. 28, PageID.702.

Plaintiffs' counsel, in consultation with the proposed Claims Administrator,

Epiq, accounted for this very scenario by making assumptions based on the past experience of Plaintiffs' counsel and the Claims Administrator in other cases. DiCarlo Decl., ¶ 7; Supp. Johns Decl., ¶ 10. For example, *Breneman v. Keystone Health*, No. 1:22-cv-01643 (Pa. Com. Pl. Apr. 11, 2023), in which proposed Lead Settlement Counsel here, Mr. Johns, was co-lead counsel in a data breach settlement that had a similar structure to the proposed settlement here. In *Keystone*, approximately 13% of the claims submitted were for CMIS. Supp. Johns Decl., ¶ 10. Further, based on a review of similar data breach cases in which class members had the option of selecting CMIS, the trend in such cases is that the amount dedicated to CMIS is less than or equal to 1% of the Net Settlement Fund. Supp. Johns Decl., ¶ 10. *See, e.g.*, *Reynolds v. Marymount Manhattan College*, Case No. 1:22-cv-6846 (S.D.N.Y.) (in a data breach case finally approved on October 20, 2023, which was similarly against a college, with a near equivalent Settlement Fund of $1,300,000, and a near equivalent class size of 191,581, the amount dedicated to CMIS represented less than 1% of the net settlement fund there). Supp. Johns Decl., ¶ 10.

Projecting a similar percentage here, the Net Settlement Fund would be far from exhausted, as the balance would still be approximately $821,700 after deduction of CMIS costs at a comparable rate (subtracting 1%, or $8,300 from $830,000). Even with, for example, a substantially higher election for rate CMIS—doubling it—the Settlement Fund would be far from exhausted. In sum, sequencing

13

the payments so that CMIS payments are made first produces a result where the Net Settlement Fund would remain robust, maintaining approximately 99% of the Net Settlement Fund prior to satisfying claims for Documented Losses. And, as set forth in the DiCarlo Declaration, the cost of providing CMIS is $10 per person. DiCarlo Decl., ¶ 8.

Finally, the Court has noted that an explanation would be helpful as to why CMIS services would take priority over valid claims for Documented Loss Payments under the proposed Settlement Agreement. ECF No. 28, PageID.702. In response, Plaintiffs aver that the Settlement Agreement is designed to provide relief to the greatest percent of the Proposed Class as practicable. In an attempt to represent the interests of the Class, Plaintiffs have sought a Settlement Agreement that takes into account the position and allegations in its Complaint. Namely, the risk that Class Members have endured is one that continues. *See, e.g.*, CAC ¶ 15. Thus, it is reasonable that first providing CMIS services will best protect and serve the greatest number of Class Members, particularly given the cost and historical claims rates for this component.

### 3. Potential Liability of Settlement Fund

The Court also notes that a further explanation of the tax costs and potential tax liability would assist the Court in assessing the suitability of this case for preliminary approval. ECF No. 28, PageID.702 (citing and referencing the

Settlement Agreement at paragraph 3.17).

Per the proposed Claims Administrator Epiq, there will be no taxes attributable to the Qualified Settlement Fund that will reduce the net value of the Settlement Fund. DiCarlo Decl. ¶¶ 4, 5. Any taxes that may end up being attributable to the Settlement Fund will only arise if the Qualified Settlement Fund experiences a gain from earned interest between the time the Qualified Settlement Fund is funded (after preliminary approval, if granted) and the time the Fund is distributed (after final approval, if granted). *Id.* Ultimately, the end result of any tax liability to the Qualified Settlement Fund would, by definition, only occur if the Settlement Fund rose as a result of interest accrued.[7]

### C.    Remedial Measures: Security Enhancements and Commitments

The Settlement Agreement provides for implementation of the following measures, at Hope College's expense, which are designed to strengthen Hope College's data and information security:

> (a)    Hope College has increased its internal and third-party Information Technology professionals, including a newly employed System Manager for Servers with specialized training in Information Security. Hope College has greatly increased its use of contracted database administrators and application specialists with significant expertise in the specific data systems

---

[7]    By way of example, if the Qualified Settlement Fund appreciated by $1,000 between funding and distribution, and assuming there was a 35% tax rate, that $1,000 gain would produce a tax liability of $350, but the Settlement Fund would still have *increased* in value by $650. And if the Qualified Settlement Fund does not experience a gain, there would be no taxes owing from the Fund.

utilized by the College to train and augment the efforts of Hope College's IT staff.

(b)    Hope College has established a data governance committee. The committee's goals include a commitment to retain sensitive data only when legally required or operationally necessary. An initial round of data analysis and deletion has been completed as of the date of this writing.

(c)    Hope College has enforced mandatory multi-factor authentication for: all email accounts; the self-service portal (accessing direct deposit changes, class schedules, grades, etc.) Hope College continues to work to identify every system that can support multi-factor authentication and enable the same whenever possible.

(d)    Hope College has updated its enterprise data loss prevention rules to continue to block personal information from leaving the organization through email or shared documents.

(e)    Hope College has reviewed and revised its enterprise firewall rules in an effort to increase its resistance to external access.

(f)    Hope College has hired an independent security contractor to perform both external penetration testing and an internal vulnerability scan. An additional vendor will be hired in late 2023 to make an independent risk assessment of the IT/network infrastructure.

(g)    Hope College has hired an independent contractor to perform remote monitoring and management to facilitate system scanning, reporting, and patch management for its on-site server environment.

(h)    Hope College has increased its mandatory training, with all employees required to take Cybersecurity Overview, Email and Messaging Safety, and Password Security Basics courses. All employees are also required to complete training detailing the confidentiality of student records pursuant to the Family Educational Rights and Privacy Act (FERPA). Employees with access to sensitive information such as IT employees, employees with access to banking information, and employees with access

16

to personally identifiable information are required to take additional courses specific to their respective levels of access. Participation is scrutinized and enforced and all participants must complete an assessment to demonstrate comprehension.

S.A. § 2.1(a)–(h).

The Settlement Agreement also provides for the continued monitoring of the implementation of these changes. S.A. § 2.2. These changes will benefit Settlement Class Members whose information remains in Hope College's possession, and also other current, former, and future applicants, students, contractors, employees, and attendees of events by protecting their PII from unauthorized access.

### D.    Class Notice and Settlement Administration

The Parties have selected as Settlement Administrator Epiq Class Action & Claims Solutions, Inc. through a competitive bidding process. Epiq is a company experienced in administering class action claims—and specifically those of the type provided for and made in data breach litigation. S.A. § 1.40; *see also* Declaration of Cameron R. Azari, Esq. ("Epiq Decl."), attached as **Exhibit B**.

Within fourteen (14) days after the issuance of the Preliminary Approval Order, Hope College will provide to the Settlement Administrator a list of any and all names, mailing addresses, telephone numbers, and email addresses of Class Members that it has in its possession, custody, or control. S.A. § 6.4. Notice will begin within thirty-five (35) days after entry of a Preliminary Approval Order. S.A. § 1.27. Using the list provided by Hope College, the Settlement Administrator will

17

run the postal addresses of Settlement Class Members through the USPS Change of Address database to update any change of address on file. Epiq Decl., ¶ 23.

The "Short Notice" will then be mailed to Settlement Class Members and if returned to Epiq with a forwarding address, Epiq will re-send it to that address. *Id.*, ¶¶ 22, 24. The Short Notice will clearly and concisely summarize the case, the Settlement, and the legal rights of the Settlement Class Members. *Id.*, ¶ 22. The Short Notice will also direct the recipients to the Settlement Website, which Epiq will establish and maintain, where Settlement Class Members can access additional information about the Settlement Agreement, their rights in relation to it, and procedures for exercising their rights to it. *Id.*, ¶¶ 22, 25; S.A. § 6.7. The Settlement Website will host a traditional "Long Form" notice. Epiq Decl., ¶ 25. The Settlement Website shall also contain information regarding how to submit Claim Forms (including through the Website) and downloadable relevant documents, including the Long Form Notice, Claim Form, the Settlement Agreement, the Preliminary Approval Order upon entry by the Court, and the operative Consolidated Complaint, and will notify the Settlement Class of the date, time, and place of the Final Approval Hearing. S.A. §§ 6.7, 7.1; Epiq Decl., ¶ 25. The Settlement Website shall also provide the telephone number and mailing address through which Class Members may contact the Settlement Administrator directly. S.A. § 6.7; Epiq Decl., ¶ 25. The Settlement Website shall also allow for submission of Requests of Exclusion through

the Website. *Id.*

Further, the Notices will clearly, concisely, and directly apprise Settlement Class Members of all the information they need to know to make a claim or to opt-out or object to the Settlement. Fed. R. Civ. P. 23(c)(2)(B); Epiq Decl., ¶ 25. The Settlement Administrator shall provide 90 days following the Notice Date for submission of Claim Forms. S.A. § 3.4. To the extent any submitted claims are incomplete or deficient, Settlement Class Members shall have 30 days to cure them. S.A. § 3.5. And within 90 days after: (i) the Effective Date (the date on which all conditions of the Settlement Agreement are satisfied which are required in advance of disbursement, *see* S.A. § 10.1); or (ii) all Claim Forms have been processed subject to the terms and conditions of this Agreement, whichever date is later, the Settlement Administrator shall cause funds to be distributed to each Class Member who is entitled to funds based on the selection made on their given Claim Form. S.A. § 3.6. In sum, the Notice Program schedule will afford sufficient time to provide full and proper notice to Settlement Class members before the Opt-Out and Objection Deadline. Epic Decl., ¶ 32.

## E.   Attorneys' Fees and Expenses

Plaintiffs will also separately seek an award of attorneys' fees not to exceed one-third (1/3) of the Settlement Fund, and reimbursement of reasonable costs and litigation expenses incurred, which shall be paid from the Settlement Fund. S.A. §

9.1. Class Counsel's fee request is well within the range of reasonableness for Settlements of this nature and size. *See, e.g.*, *Thomsen v. Morley Companies, Inc.*, 639 F. Supp. 3d 758, 768 (E.D. Mich. 2022) (in data breach case similarly resolved through mediation, court approved fee request of 33%, finding it to be "adequate"); *Garner Properties & Mgmt., LLC v. City of Inkster*, No. 17-cv-13960, 2020 WL 4726938, at *10 (E.D. Mich. Aug. 14, 2020) (holding an attorneys' fee request, which was 1/3 of settlement fund, to be reasonable). Plaintiffs' motion for attorneys' fees, should preliminary approval be granted, will be filed in advance of the objection deadline, and uploaded to the settlement website promptly after it is filed with the Court.

### F.    Service Awards to Named Plaintiffs

Plaintiffs in this case have been vital in litigating this matter, and have been personally involved in the case and support the Settlement. Johns Decl., ¶¶ 12, 27, 28, 30. Plaintiffs actively assisted Plaintiffs' counsel with their investigation, sat through multiple interviews, provided supporting documentation and personal information throughout the process. *Id.* ¶ 27, 28, 30. Plaintiffs will separately petition for awards of $1,500 each, recognizing their time, effort, and expense incurred pursuing claims that benefited all Settlement Class Members. S.A. § 8.1.

The amount requested here is reasonable and common in settled class actions. *See, e.g.*, *Morley*, 2023 WL 3437802, at *3 (E.D. Mich. May 12, 2023) (granting

final approval of service awards of $1,500 in similarly situated data breach case); *Garner*, 2020 WL 4726938 at \*12 (approving $1,000 service award); *Strano v. Kiplinger Washington Eds., Inc.*, 649 F. Supp. 3d 546, 561 (E.D. Mich. 2023) (preliminarily approving $1,000 service award); *Moeller v. The Week Publications, Inc.*, 649 F. Supp. 3d 530, 545 (E.D. Mich. 2023) (same).

### G.    Release

Plaintiffs and the Settlement Class, upon entry of Final Approval Order, will be deemed to have "completely and unconditionally released, forever discharged and acquitted the Released Persons from any and all of the Released Claims, including Unknown Claims." S.A. § 4.1; *Id.* § 1.35, Released Claims definition.

## V.    ARGUMENT

"The question at the preliminary-approval stage is 'simply whether the settlement is fair enough' to begin the class-notice process." *Moeller*, 649 F. Supp. 3d at 537 (citing *Garner*, 333 F.R.D. 614, 626 (E.D. Mich. 2020)). And a settlement agreement itself should be preliminarily approved if it (1) "does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment to class representatives or of segments of the class, or excessive compensation for attorneys," and (2) "appears to fall within the range of possible approval." *Garner*, 333 F.R.D. at 621[8]; *see also Berry v. Sch. Dist. of*

---

[8]    Unless otherwise noted, all citations and internal quotations are omitted.

21

*Benton Harbor*, 184 F.R.D. 93, 97 (W.D. Mich. 1998) (finding that a court must preliminarily approve a class settlement "[u]nless it appears that the compromise embodied in the agreement is illegal or tainted with collusion"). And "it is clear the bar is lower for preliminary approval than it is for final approval." *Garner*, 333 F.R.D. at 621.

### A.    The Court Should Certify the Proposed Settlement Class

Before granting preliminary approval of the proposed Settlement, the Court must determine that the proposed settlement class is appropriate for certification. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class satisfies the numerosity, commonality, typicality, and adequacy of representation requirements. Fed. R. Civ. P. 23(a); *see also Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 460 (2013). Because certification is sought under Rule 23(b)(3), Plaintiffs must demonstrate that common questions of law or fact predominate over individual issues and that a class action is the superior device to adjudicate the claims. *Amchem*, 521 U.S. at 615–16. District courts are given broad discretion to determine whether certification of a class action is appropriate. *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013). As explained below, the proposed Settlement Class satisfies all of the Rule 23(a) and 23(b)(3) prerequisites, and thus, should be certified.

### 1.    Rule 23(a) Requirements Are Met for Settlement Purposes

*Numerosity and Ascertainability.* The first prerequisite is that the "class is so numerous that joinder of all members is impracticable." Rule 23(a)(1); *see also In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Though there is no fixed number determining impracticability, "[i]n most cases, a class in excess of forty members will do." *Curry v. SBC Commc'ns, Inc.*, 250 F.R.D 301, 310 (E.D. Mich. 2008). And as few as thirty-five class members has been found to be sufficient. *Afro Am. Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974);*Davidson v. Henkel*, 302 F.R.D. 427, 436 (E.D. Mich. 2014) (noting the modern trend requires a minimum of 21 to 40 class members). The Settlement Class includes approximately 156,783 individuals identified by Hope College —thus satisfying the numerosity requirement for purposes of settlement. *See* Fed. R. Civ. P. 23(a)(1). The Class is ascertainable as well. *See Kinder v. Nw. Bank*, 278 F.R.D. 176, 182 (W.D. Mich. 2011) ("[T]he requirement that there be a class will not be deemed satisfied unless the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."). Indeed, Hope College has already identified and provided notice to 156,783 individuals that their information may have been exposed in the Data Breach.

*Commonality.* Next, commonality is satisfied under Rule 23(a)(2) when there are questions of law or fact common to the class—the resolution of which will bring

a class-wide resolution of the claims. Fed. R. Civ. P. 23(a)(2). Commonality may be shown when the claims of all class members "depend upon a common contention," with even a single common question sufficing. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545, 2551 (2011); *Whirlpool*, 722 F.3d at 853. The common contention must be capable of class-wide resolution and the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2545, 2551. Here, Plaintiffs' claims turn on the adequacy of Hope College's data security in protecting Settlement Class Members' PII. Evidence to resolve that claim does not vary among class members, and so can be fairly resolved, at least for purposes of settlement, for all Settlement Class Members at once.

*Typicality*. Typicality requires that a class representative has claims that are typical of those of other class members. Fed. R. Civ. P. 23(a)(3). Plaintiffs satisfy the typicality requirement where their "claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc*., 511 F.3d 554, 561 (6th Cir. 2007). Typicality is designed to assess "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir.

24

1998). The representative's claims need not be identical; rather, they need only "arise from the same course of conduct." *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997). "In determining whether the requisite typicality exists, a court must inquire whether the interests of the named plaintiff are 'aligned with those of the represented group,' such that 'in pursuing his own claims, the named plaintiff will also advance the interests of the class members.'" *Garner*, 333 F.R.D. at 623 (quoting *In re Am. Med.*, 75 F.3d at 1082). Plaintiffs allege that each individual who received a letter that their PII may have had their PII compromised as a result of the Data Breach, and were thus impacted by the same allegedly inadequate data security that they allege harmed the rest of the Settlement Class. Thus, Plaintiffs' pursuit of their own claims here will necessarily advance the interests of the Settlement Class, satisfying the typicality requirement.

*Adequacy.* Class representatives under Rule 23(a)(4) must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). "Class representatives are adequate when it appears that they will vigorously prosecute the interest of the class through qualified counsel . . . which usually will be the case if the representatives are part of the class and possess the same interest and suffer the same injury as the class members." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007). Class representatives must be part of the class, possess the same interest, have

suffered the same injury, and seek the same type of relief as other class members. *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 562 (6th Cir. 2007).

Class Representatives here have no conflicts with the Settlement Class, have participated actively in the case, and are represented by attorneys experienced in class action litigation, including data breach cases.

Plaintiffs' counsel here regularly engages in consumer privacy cases, have the resources necessary to prosecute this case, and have frequently been appointed lead class counsel in data breach actions as well as other class actions. *See Meyers v. Onix Grp., LLC*, No. CV 23-2288-KSM, 2023 WL 4630674, at *2 (E.D. Pa. July 19, 2023) (". . . the Court finds that Mr. Johns . . . possess[es] extensive experience with class actions and the types of claims asserted, as well as considerable knowledge of the applicable law in this case. Mr. Johns . . . has almost 20 years of experience with complex class action cases and has been appointed Lead Counsel in data breach cases over a dozen times in various jurisdictions across the country[.]") (citations omitted). Plaintiffs' counsel are well suited to advocate on behalf of the Class. Plaintiffs' counsel have devoted substantial resources to the prosecution of this action by investigating Plaintiffs' claims and that of the Settlement Class, obtaining, reviewing and analyzing Plaintiffs' detailed personal records, analyzing Hope College's records, privacy policies, any remedial steps, scope and number impacted by the Data Breach, Hope College's financial condition, participating in mediation,

and, ultimately, negotiating a settlement that provides meaningful relief for the Settlement Class, despite the substantial litigation risks that were present. Johns Decl. ¶¶ 29, 31. In sum, Plaintiffs' counsel have vigorously prosecuted this action and will continue to work diligently on behalf of the Settlement Class throughout the settlement administration process.

## 2. Rule 23(b) Requirements Are Met for Purposes of Settlement

After satisfying Rule 23(a), a plaintiff must also satisfy one of the three requirements of Rule 23(b) for the Court to certify the proposed class. Fed. R. Civ. P. 23(b); *see also Dukes*, 131 S. Ct. at 2548; *Merenda v. VHS of Michigan, Inc.*, 296 F.R.D. 528, 536 (E.D. Mich. 2013).

Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that (i) common questions of law and fact predominate over individualized ones, and that (ii) a class action is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). "A plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564. And the superiority requirement of Rule 23(b)(3) considers "the difficulties likely to be encountered in the management of a class action" and whether individual litigation would yield small recoveries. *Id.*; *see also Amchem*, 521 U.S. at 617 ("[t]he policy at the very

core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). As explained below, the proposed Settlement Class meets these requirements.

### a)    Common Questions of Law and Fact Predominate

Predominance focuses on whether the defendant's alleged liability is common enough to warrant class-wide adjudication. *Amchem*, 521 U.S. at 623. The proposed class must be "sufficiently cohesive to warrant adjudication by representation." *Id.* The Rule 23(b)(3) predominance requirement is akin to the commonality requirement Rule 23(a) "in that both require that common questions exist, but [Rule 23](b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *Machesney v. Lar-Bev of Howell, Inc.*, 317 F.R.D. 47, 61 (E.D. Mich. 2016). As such, predominance is met if a single factual or legal question is "at the heart of the litigation." *See Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007).

Data breach cases, such as the action here, present multiple questions of law and fact that are central to liability and thus predominate over any issues affecting individual class members. Hope College's alleged course of conduct was uniform across the entire Settlement Class, engaging in a single course of conduct with respect to all members of the Settlement Class, so their claims "will prevail or fail

in unison." *Whirlpool*, 722 F.3d at 859. And since class-wide determination of this issue will be the same for all, i.e., determining whether any class member has a right of recovery, the predominance requirement is readily satisfied.

### b)    A Class Action Is the Superior Method of Adjudication

Certification of this suit as a class action is superior to other methods to fairly, adequately, and efficiently resolve the claims here. "The superiority requirement of Rule 23(b)(3) is met if the class action is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 407–08 (E.D. Mich. 2012). Such is especially true in situations which "vindicat[e] the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem*, 521 U.S. at 617. Adjudicating individual actions here is impracticable: the amount in dispute for individual Settlement Class Members here is too small, the technical issues involved too complex, and the expert testimony and document review too costly. The individual amounts here are insufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aid of adequate counsel. Rather, individual prosecution of claims would be prohibitively expensive, needlessly delay resolution, and may lead to inconsistent rulings.[9] Thus, the Court should certify the Class pursuant to

---

[9]    Because this Action is being settled on a class-wide basis, such theoretical inefficiencies are resolved—and the Court need not consider further issues of

Rule 23(b)(3). Hope College does not oppose class certification for settlement purposes.

### B.    The Court Should Appoint Proposed Settlement Counsel Benjamin F. Johns as Class Counsel

The next step when deciding whether to preliminarily approve a settlement is to appoint Class Counsel. Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Rule 23(g)(1)(B). In making this determination, courts generally consider the following factors: (1) proposed class counsel's work in identifying or investigating potential claims; (2) proposed counsel's experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) proposed counsel's knowledge of the applicable law; and (4) proposed counsel's resources committed to representing the class. Rule 23(g)(1)(A)(i-iv).

As discussed above, Proposed Settlement Class Counsel has extensive experience in prosecuting data breach class actions and other complex cases. Johns Decl., ¶¶ 2, 26, 33. Further, Proposed Settlement Class Counsel has diligently investigated and prosecuted *this* case by dedicating substantial resources to it and

---

manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems").

successfully negotiating this Settlement. *See* S.A.; CAC. Thus, the Court should appoint Benjamin F. Johns of Shub & Johns LLC as Settlement Class Counsel.

### C.    The Proposed Settlement Is Fundamentally Fair, Reasonable, and Adequate and Thus Warrants Preliminary Approval

Settlement of class action suits is favored. *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). The first step is a "preliminary, pre-notification hearing to determine whether the proposed settlement is within the range of possible approval." *In re Packaged Ice Antitrust Litig.*, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010); *see also Newberg*, § 11.25, at 3839 (quoting *Manual for Complex Litigation* § 30.41 (3d ed. 1995)). Preliminary approval requires only an "initial evaluation" of the fairness of the settlement made on the basis of written submissions and informal presentations from the settling parties. *Manual for Complex Litigation*, § 21.632 (4th ed. 2004). The Court must "ensur[e] that the proposed settlement is not illegal or collusive" based upon the "issues and evidence, as well as the arms-length nature of the negotiations prior to the proposed settlement." *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262, 270 (E.D. Ky. 2009).

Rule 23(e)(2) provides factors for the Court to determine if a settlement is "fair, reasonable, and adequate," examining whether: (A) class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, reviewing: (i) the

costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the processing of class-member claims; (iii) the terms of any proposed attorney's fee, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(2); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

In addition, the Sixth Circuit has laid out its own factors to consider. *See UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). They are: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Id.* The Settlement Agreement meets each consideration.

### 1.    The Rule 23(e)(2) Factors Weigh in Favor of Preliminary Approval

This Settlement easily satisfies the Rule 23(e)(2) factors.

<u>First</u>, Plaintiffs and Plaintiffs' Counsel have adequately represented the Class, securing a per class member gross recovery of $9.57 here that exceeds, or at minimum is on par with, comparable data breach class action settlements. *See, e.g.*, *Morley*, 2023 WL 3437802, at *2 (approximately $6.19 per person gross award); *Tucker v. Marietta Area Health Care, Inc.*, No. 2:22-cv-00184 (S.D. Ohio)

(approximately $8.08 per person gross award); *Kondo v. Creative Services, Inc.*, No. 1:22-cv-10438 (D. Mass.) (approximately $7.26 per person gross award); *In re Afni, Inc. Data Breach Litigation*, No. 1:22-cv-01287 (C.D. Ill.) (approximately $7.08 per person gross award); *Keefer v. Fulton Bank, N.A.*, No. 1:23-md-03056 (N.D. Ga.) (approximately $6.72 per person gross award). And the projected per class member *net* recovery of $5.29 here even exceeds the gross per class member awarded in other similar data breach cases. *See, e.g.*, *Keystone*, No. 1:22-cv-01643 (Pa. Com. Pl. Apr. 11, 2023) (gross per class member award of approximately $3.83); *In re The Home Depot, Customer Data Sec. Breach Litig.*, No. 1:14-MD-2583, ECF No. 181-2 (N.D. Ga. Mar. 7, 2016) (approximately $0.51 gross per class member); *Nelson v. Bansley & Kiener LLP*, No. 2021-CH-06274 (Ill. Cir. Ct.) (approximately $3.28 gross recovery per class member).

Second, the Settlement was negotiated at arm's-length through the use of a neutral, Bennett G. Picker, Esq. of Stradley Ronon, as mediator after exchanging information sufficient to assess the strengths and weaknesses of each Party's position. *See Morley*, 639 F. Supp. 3d at 768 (granting preliminary approval to a data breach settlement that was mediated with Mr. Picker's assistance).

Third, the relief is adequate. The Settlement Agreement provides for Settlement Class Members to elect for one of three avenues of recovery: Documented Loss Payment, Credit Monitoring and Insurance Services, or Cash

Fund Payment, described *supra*. S.A. ¶¶ 3.2(a)–(c). As described above, the sequencing of disbursements is designed to provide the greatest number of Class Members with projected relief going forward, and, even in doing so, this is not projected to come close to exhausting the Settlement Fund prior to compensating Class Members who endured verifiable damages. And the proposed attorneys' fees, service awards, and costs are consistent with other data breach settlements. *See supra*.

Fourth, the proposed Settlement treats Settlement Class Members equitably as to each other as every Settlement Class Member has an equal opportunity to elect to receive one of the three avenues of recovery, *see* S.A. ¶¶ 3.2(a)–(c), including the option for a *pro rata* cash payment identical to all other Settlement Class Members who make that election. S.A. ¶ 3.2(c). Again, the sequencing of the payments aids in producing an equitable result for Class Members. This settlement structure has received preliminary and final approval in other data breach cases. *See, e.g.*, *Keystone*, *supra*.

Finally, all terms affecting the Settlement Class are available for review by Settlement Class Members and are contained within the Settlement Agreement.

### 2.    The Sixth Circuit's *UAW* Factors Weigh in Favor of Preliminary Approval

All seven *UAW* factors favor approval.

34

a)  **The Settlement Agreement Is the Result of Informed, Non-Collusive, Arm's Length Negotiations Between the Parties.**

The first factor weighs in favor of granting preliminary approval. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Thacker*, 695 F.Supp.2d at 531. Negotiations overseen by a neutral mediator are given extra weight. *See Bert v. AK Steel Corp.*, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties"). This case was settled through the persistent help and oversight of a respected mediator; Mr. Picker has substantial experience mediating and resolving complex class actions, including data breach class action settlements. Mr. Picker's active involvement ensured that the negotiations proceeded at arm's length. And, through the mediation process, Plaintiffs' Counsel obtained information confirming size of the putative class. *See* S.A., Recitals (class size of 156,783 persons).

b)  **The Complexity, Expense and Likely Duration of the Litigation Favors Approval of the Settlement.**

The second factor, complexity and likely duration case, supports approval. *See In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008) ("expense and possible duration of litigation are major factors to be

considered in evaluating the reasonableness of a settlement"). "For class actions in particular, courts view settlement favorably because it avoids the costs, delays and multitudes of other problems associated." *Id.* Absent an early resolution, this case has the capacity to persist for a number of years without resolution. Pre-trial litigation would be extensive, with voluminous discovery needed from Hope College and any third-party companies that Hope College has used in an information technology capacity. Experts would be required to testify regarding Hope College's data security practices, industry standard practices, and how its practices deviated therefrom. Substantial fact-finding would be required into what information was taken, how, and what impact this had and will have on the Settlement Class. Plaintiffs would need to survive potential dispositive motions and prevail on a motion for class certification. Such motion practice, and potential appeals, could consume years, during which the law could change and threaten the claims. Given the complexity of the claims and arguments here, a lengthy trial would follow. Litigation would be extraordinarily complex, and it could take several years for the Class to see any real recovery, if any at all.

Rather than pursuing protracted and uncertain litigation, Plaintiffs and their counsel negotiated a Settlement Agreement that provides immediate, certain, and meaningful relief. The second factor weighs in favor of finding the Settlement fair, reasonable, and adequate. *See Borcea v. Carnival Corp.*, 238 F.R.D. 664, 674 (S.D.

Fla. 2006). Thus, the anticipated potential litigation here favors approval.

### c)   The Parties Engaged in Sufficient Fact-Finding.

The Court next asks whether the plaintiff has enough information to "adequately assess their case and the desirability of the proposed settlement" at this stage of the proceedings. *Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012). Courts often "defer to the judgment of experienced trial counsel with regard to the evaluation of the strength of the case and the desirability of settlement at this stage of the proceeding." *Id.*

Here, although the Parties reached a proposed settlement early on, Class Counsel made an informed decision regarding the appropriateness of settlement. Prior to mediation, Plaintiffs served and received informal discovery pertaining to: cyber-forensic reports, internal investigations, correspondence with government regulatory agencies, the number and type of persons affected, security measures taken post-Data Breach, the types of PII that were potentially compromised, and the amount of insurance coverage. Johns Decl., ¶ 12; *see also In re Wawa, Inc. Data Sec. Litig.*, No. CV 19-6019, 2021 WL 3276148, at *9 n.4 (E.D. Pa. July 30, 2021) ("Although the Consumer Plaintiffs and Wawa did not engage in 'formal' discovery, that is not necessarily an obstacle for preliminary approval of a class action settlement, especially where, as here, the parties have exchanged important informal discovery.") (citing *Fulton-Green v. Accolade, Inc.*, No. CV 18-274, 2019 WL

316722, at *3 (E.D. Pa. Jan. 24, 2019)); *Trombley v. Nat'l City Bank*, 759 F. Supp.
2d 20, 26 (D.D.C. 2011) ("Although the Court will consider the timing of the
settlement and the amount of discovery conducted at the final approval stage, the
Court will not deny preliminary approval due to the absence of significant discovery
at this point.").

Plaintiffs' Counsel thoroughly evaluated this in their analysis of damages.
Johns Decl., ¶ 12, 25, 26, 31. Through the above process and the mediation, Class
Counsel came to understand the size of the Settlement Class, the issues at hand, and
obtain an excellent settlement for Class Members. *Id*. at ¶ 14, 29, 31; *see also Int'l
Union*, 2008 WL 2968408, at *26 (E.D. Mich. July 31, 2008) (noting the use of
informal discovery as an adequate tool for class counsel to make an informed
decision). Combined with their experience, Plaintiffs' Counsel had all the
information needed to "adequately assess the[] case and the desirability of the
proposed settlement." *See Kritzer*, 2012 WL 1945144, at *7. Thus, the Court should
find that Class Counsel conducted sufficient fact-finding.

### D)  The Settlement Provides Favorable Relief When Weighed Against the Likelihood of Success on the Merits.

To "judge the fairness of a proposed compromise," a court "weigh[s] the
plaintiff's likelihood of success on the merits against the amount and form of the

relief offered in the settlement." *Int'l Union*, 497 F.3d at 631. While Plaintiffs are confident in their claims, there is risk here, as is true in all complex class actions.

And this area of law is especially risky. Historically, data breach cases face substantial hurdles in surviving even the pleading stage. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 U.S. Dist. LEXIS 71996, at *2–4 (S.D.N.Y. June 25, 2010) (collecting cases). Even cases implicating data far more sensitive have been found wanting at the district court level. *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) (finding that the factual allegations in the complaints were insufficient to establish standing), *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing). As another court recently observed in finally approving a settlement with similar class relief, "[d]ata breach litigation is evolving; there is no guarantee of the ultimate result . . . [they] are particularly risky, expensive, and complex"). *Fox v. Iowa Health Sys.*, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021).

Given this risk and uncertainty, settlement is the more prudent course when a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. And as in any data breach case, establishing causation on a class-wide basis is rife with uncertainty. *See, e.g.*, *In re Hannaford Bros. Co. Cust. Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013).

39

In light of the above, the $1,500,000 gross Settlement Fund for the Settlement Class in this case is an excellent result. As discussed above, the gross Settlement Fund approximates $9.57 per Settlement Class Member. Johns Decl., ¶ 19. And even after administrative fees, costs, and proposed Service Awards, the Net Settlement Fund still produces a projected $5.29 net recovery per Settlement Class Member. Supp. Johns Decl., ¶ 11. Based on Plaintiffs' Counsel's experience in similar cases—including with claims rates—the Settlement Fund detailed in § 3.1 and the expansive relief provides ample compensation for Settlement Class Members' legitimate individual claims and for class-wide claims in the aggregate. *See* S.A. § 3.2.

As noted above, the net Settlement value per class member here vastly exceeds that of other exemplary data breach settlements. *See, e.g.*, *Home Depot*, No. 1:14-MD-2583 (N.D. Ga. Mar. 7, 2016) (approximately $0.51 per class member); *In re Target Customer Data Sec. Breach Litig.*, No. MDL 14-2522, (D. Minn. Mar. 18, 2015) ($0.17 per class member). The above underscore Plaintiffs' exemplary resolution for the Settlement Class.

### e) **Proposed Class Counsel and Class Representative Support the Settlement.**

The fifth *UAW* factor is "the opinions of class counsel and class representatives." *UAW*, 497 F.3d at 631. "The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement." *UAW*, 2008 WL 4104329, at *26. Here, both proposed Settlement Class Counsel, all

40

Plaintiffs' counsel, and the Class Representatives support the Settlement. *See* Johns Decl. ¶¶ 27, 34. This *UAW* factor, therefore, favors preliminary approval.

### f)    The Reaction of Absent Class Members Is Not Applicable.

This cannot be discerned because notice has not yet been given to the Class. Notice has not yet been disseminated, and the Settlement Class has accordingly not yet had an opportunity to voice any opposition to (or support for) the Settlement. Nonetheless, as noted, Plaintiffs and all Plaintiffs' Counsel strongly support the Settlement, which they believe is fair, reasonable, and adequate and in the best interest of the Settlement Class. *See In re Fed. Skywalk Cases*, 97 F.R.D. 380, 389 (W.D. Mo. 1983) ("While the Court cannot blindly accept the recommendation of class counsel, the Court is entitled to and does place considerable weight on their recommendations."); *Fisher Bros. v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446, 552 (E.D. Pa. 1985) ("[T]he professional judgment of counsel involved in the litigation is entitled to significant weight."). Accordingly, the sixth factor weighs in favor of preliminary approval.

### g)    The Settlement Is in the Public's Interest.

Finally, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously different and unpredictable and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003). The settlement of a class

41

action affecting approximately 156,783 people is consistent with the public interest, as it conserves judicial resources and ensures uniformity. The Settlement thus falls within the range of approval under each of the Sixth Circuit's factors, and notice should be issued to the Class.

### D.    The Proposed Notice Plan Is the Best Practicable

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances . . . who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(1). Notice is "adequate if it may be understood by the average class member." NEWBERG, § 11:53 at 167. As shown by the proposed notices and Epiq's Declaration, the Notice plan developed by both Parties satisfies the requisite criteria. *See also* § IV(D.) here.

## VI.    CONCLUSION

Based on the above, Plaintiffs respectfully request the Court certify the class, appoint Plaintiffs as Class Representatives, appoint Benjamin F. Johns as Settlement Class Counsel, grant preliminary Settlement approval, approve the form and manner of the notice as described, and schedule a Final Fairness hearing.

Dated: November 17, 2023                    Respectfully Submitted:

                                            /s/ Benjamin F. Johns
                                            Jonathan Shub
                                            Benjamin F. Johns
                                            Samantha E. Holbrook
                                            **SHUB & JOHNS LLC**
                                            Four Tower Bridge,
                                            200 Barr Harbor Drive, Ste 400
                                            Conshohocken, PA 19428
                                            T: (610) 477-8380
                                            jshub@shublawyers.com
                                            bjohns@shublawyers.com
                                            sholbrook@shublawyers.com

                                            *Proposed Lead Settlement Counsel*

                                            E. Powell Miller (P39487)
                                            Emily E. Hughes (P68724)
                                            **THE MILLER LAW FIRM, P.C.**
                                            950 W. University Dr., Suite 300
                                            Rochester, MI 48307
                                            T: (248) 841-2200
                                            epm@millerlawpc.com
                                            eeh@millerlawpc.com

                                            **LOWEY DANNENBERG, P.C.**
                                            Christian Levis*
                                            Amanda G. Fiorilla*
                                            44 South Broadway, Suite 1100
                                            White Plains, NY 10601
                                            T: (914) 997-0500
                                            clevis@lowey.com
                                            afiorilla@lowey.com

                                            **LOWEY DANNENBERG, P.C.**
                                            Anthony M. Christina*
                                            One Tower Bridge
                                            100 Front Street, Suite 520
                                            West Conshohocken, PA 19428

43

T: (215) 399-4770
achristina@lowey.com

**CHESTNUT CAMBRONNE PA**
Bryan L. Bleichner
Philip J. Krzeski
100 Washington Avenue South, Suite 1700
Minneapolis0
bbleichner@chesnutcambronne.com
pkrzeski@chestnutcambronne.com

**THE LYON LAW FIRM, LLC**
Joseph M. Lyon
2754 Erie Ave.
Cincinnati, OH 45208
Phone: (513) 381-2333
jlyon@thelyonfirm.com

Charles R. Ash, IV (P73877)
**ASH LAW, PLLC**
402 W. Liberty St.
Ann Arbor, MI 48178
Phone: 734-234-5583
cash@nationalwagelaw.com

Terence R. Coates
Justin C. Walker
Dylan J. Gould*
**MARKOVITS, STOCK &
DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati1msdlegal.com
jwalker@msdlegal.com
dgould@msdlegal.com

*Attorneys for Plaintiffs and Proposed Class*
*\*Admission Pending*

44

## <u>CERTIFICATE REGARDING WORD COUNT</u>

Plaintiffs, in compliance with W.D. Mich. LCivR 7.2(b)(i)-(ii), used 10,110 words[12] in Plaintiffs' foregoing brief. Microsoft Word for Office 365 Business version 1910 is the word processing software used to generate the word count in the attached brief.

Dated: November 17, 2023                Respectfully submitted,

*/s/ Benjamin F. Johns*
Benjamin F. Johns
**SHUB & JOHNS LLC**
Four Tower Bridge,
200 Barr Harbor Drive, Ste 400
Conshohocken, PA 19428
(610) 477-8380
bjohns@shublawyers.com

---

[12]    Since a motion for preliminary approval of class action settlement may ultimately result in the case being fully disposed of, Plaintiffs aver that the word count provided for under W.D. Mich. LCivR 7.2(b)(i), Dispositive Motions-permitting a maximum of 10,800 words, applies here.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 17, 2023, I electronically filed the foregoing documents using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

<u>*/s/ Benjamin F. Johns*</u>
Benjamin F. Johns
**SHUB & JOHNS LLC**
Four Tower Bridge,
200 Barr Harbor Drive, Ste 400
Conshohocken, PA 19428
T: (610) 477-8380
bjohns@shublawyers.com